IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**DARLING BEANE, et al.,**

    **Plaintiffs,**

v.                                CIVIL ACTION NO. 2:07-0017

**HORACE MANN INSURANCE COMPANY,
et al.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendant Horace Mann Insurance Company's and defendant Albert Arredondo's motion for leave to appear and defend in the name of the underinsured motorists (Doc. No. 6) and motion to bifurcate and stay (Doc. No. 4). For the reasons set forth below, the motions are **DENIED**.

### I.  Factual and Procedural Background

This matter arises from an automobile accident that occurred on December 22, 2004, in South Charleston, West Virginia. (Doc. No. 1 Ex. 1 at 5.)  On that date, plaintiff Darling Beane was a passenger on a Kanawha County School bus that was allegedly struck by an automobile operated by Thomas D. Starkey. (Id. at 6.)  Starkey's automobile was insured by Allstate Insurance Company ("Allstate") under a policy that included fifty thousand dollars in liability coverage. (Id.)  Allstate settled Mrs. Beane's claim against Starkey for the $50,000.00 policy limits without Beane filing suit against Starkey and Allstate. (Id.)

Mrs. Beane and her husband, plaintiff Scott Beane, had their own insurance policy through defendant Horace Mann Insurance Company ("Horace Mann") that included one hundred thousand dollars in underinsured motorist coverage. (Id.)  Horace Mann consented to the above settlement with Allstate and Starkey, and also waived its subrogation rights related to the settlement. (Id.)  Because Mrs. Beane's damages allegedly exceeded the $50,000.00 Allstate settlement, plaintiffs then began negotiations with Horace Mann pursuant to their policy's underinsured motorist coverage. (Id.)  When the parties were unable to reach a settlement, plaintiffs brought this action against Horace Mann and Albert A. Arredondo, Horace Mann's adjuster on plaintiffs' case. (Id. at 6-7.)

Plaintiffs' complaint was originally filed in the Circuit Court of Kanawha County and subsequently removed to this court on January 1, 2007, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. No. 1.)  The complaint alleges causes of action for breach of contract, breach of the covenants of good faith and fair dealing, and violations of the West Virginia Unfair Trade Practices Act at West Virginia Code Sections 31-11-1, et seq.[1]

---

[1] Specifically, plaintiffs allege that defendants violated West Virginia Code Sections 33-11-4(9)(b), (c), and (f), as well as 114 West Virginia Code of State Rules Sections 14-6.1, 6.4(a) and (b).  (Doc. No. 1 Ex. 1 at ¶ 22.)

On February 8, 2007, defendants filed two motions, one seeking permission to appear and defend the instant suit in the name of Starkey, the underinsured motorist (Doc. No. 6), and the other requesting that the court bifurcate plaintiffs' extra-contractual claims and stay discovery with respect to those claims pending resolution of the underinsured claims (Doc. No. 4). Both motions are ripe for adjudication.

## II.  Analysis

### A.  Defendants' Motion for Leave to Appear and Defend

Defendants claim a right to appear and defend the portion of this action relating to underinsured motorist coverage pursuant to West Virginia Code § 33-6-31(d), which states in pertinent part as follows:

> Any insured intending to rely on the coverage required by subsection (b) [relating to uninsured and underinsured motorist coverage] of this section shall, **if any action be instituted** against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

W. Va. Code § 33-6-31(d)(emphasis added).

The plain language of the statute as quoted above would seem to refute defendants' position that this section creates an absolute right on the part of the underinsured carrier to defend

-3-

in the name of the underinsured motorist. Indeed, this reading of the statute has been confirmed by the Supreme Court of Appeals of West Virginia:

> A plaintiff is not precluded under W. Va. Code, 33-6-31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.

Postlethwait v. Boston Old Colony Ins. Co., 432 S.E.2d 802, syl. pt. 4 (W. Va. 1993). The court explained that the purpose of this code section is to protect a carrier from having a judgment entered against it without the opportunity to defend the suit. Id. at 805. That potential prejudice does not exist in a case in which, as here, the carrier "is not bound by collateral estoppel principles because no judgment was rendered against the tortfeasor, [and] the plaintiffs still will have to prove liability and their applicable damages." Id. at 806.

In reaching its decision, the Postlethwait court found significant the fact that the uninsured/underinsured carrier had waived its right of subrogation against the tortfeasor, as Horace Mann has done in this case. Id. at 805. Had Horace Mann declined to waive its subrogation right, it could have forced suit to be brought in the name of the underinsured motorist, Mr.

Starkey. Id. at 807. Horace Mann waived that right, however, and it is therefore not entitled to the relief sought.[2]

**B.   Defendants' Motion to Bifurcate and Stay**

Defendants' second motion seeks bifurcation of plaintiffs' extra-contractual claims and a stay of discovery as to those claims pending resolution of plaintiffs' underinsured coverage claim. (Doc. No. 4.) Rule 42(c) of the West Virginia Rules of Civil Procedure provides as follows:

> *Separate Trials*. – The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

---

[2] Defendants attempt to distinguish Postlethwait by relying on the West Virginia Supreme Court's unpublished opinion in Dowler v. Reed, No. 21960, slip op. at 4 (W. Va. Dec. 10, 1993) ("[W]e have not expanded that principle to one that would grant the plaintiff an absolute right to sue his own underinsurance carrier in every situation wherein a settlement with a tortfeasor's insurer and a waiver of subrogation rights have been obtained."). The West Virginia Supreme Court has held that its unpublished opinions "are of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case." Pugh v. Workers' Compensation Comm'r, 424 S.E.2d 759, syl. pt. 3 (W. Va. 1992). Accordingly, the court will follow the clear precedent of Postlethwait. See also Jones v. Sanger, 512 S.E.2d 590 (W. Va. 1998)(plaintiff not precluded from bringing direct action against underinsured carrier where carrier had consented to settlement of personal injury action and waived subrogation rights); Plumley v. May, 434 S.E.2d 406, 411 (W. Va. 1993)(same).

In answer to a certified question from this court, the West Virginia Supreme Court in Light v. Allstate Insurance Company, 506 S.E.2d 64 (W. Va. 1998), made clear that "in a first-party bad faith action against an insurer, bifurcation and stay of the bad faith claim from the underlying action are not mandatory." Id. at 72. Rather, the court is to consider whether bifurcation and stay would promote the interests set forth in Rule 42(c): convenience, economy, and the avoidance of prejudice. Id. (citing W. Va. R. Civ. P. 42(c)).

Light involved facts substantially similar to those before the court in this case, except that the plaintiffs neglected to obtain their underinsured carrier's consent to their settlement with the tortfeasor's insurance company.[3] Light, 506 S.E.2d at 65-66. Following the West Virginia Supreme Court's answer to the certified question, this court considered the three interests above as directed by Federal Rule of Civil Procedure 42(b)[4] and

---

[3] Defendants contend that Light is further distinguishable because the underinsured carrier, which was contesting coverage, did not attempt to defend the suit in the name of the underinsured tortfeasor. (Doc. No. 12 at 2.) Defendants continue, "[I]n the present case, Horace Mann has elected to defend the underinsured portion of this case in the name of the tortfeasor as it is statutorily permitted to do under *West Virginia Code* § 33-6-31." (Id.) Because of the court's determination that Horace Mann may not appear and defend this suit in the name of the underinsured motorist, the court is not persuaded by defendants' argument on this point.

[4] Federal Rule of Civil Procedure 42(b), which the court applied pursuant to the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 78 (1938), is virtually identical to West

declined to bifurcate.  <u>Light v. Allstate Ins. Co.</u>, 182 F.R.D. 210, 213-14 (S.D. W. Va. 1998)(Hallanan, J.).  Judge Elizabeth Hallanan explained her reasoning as follows:

> Bifurcation of the instant action not only decreases [underinsured carrier] Allstate's incentive to settle the case prior to trial, but also impedes upon swift judicial resolution and convenience.  With respect to the incentive to settle, bifurcation affords Allstate, the holder of vast resources, the opportunity to go forward with this five year old action in piecemeal fashion.  Allstate would be allowed to first try the contract claim, and should defense of that claim prove fruitless, then and only then be faced with the bad faith claim.  As articulated by the Lights, "bifurcation of these claims would give Allstate two bites at the apple."

<u>Id.</u> at 213.  The court further noted that bifurcation would promote judicial economy only if the underinsured carrier prevailed at the initial stage, and that if it did not, the court and parties would be burdened with two phases of discovery, motions, voir dires, and two separate trials.  <u>Id.</u>

The same considerations apply to this case.  Moreover, defendants have not demonstrated that they will be prejudiced by a unitary trial of this matter.  Defendants' primary argument in this regard is that a unitary trial would prevent it from defending the underinsured coverage claim in the name of the underinsured motorist.  (Doc. No. 5 at 4.)  Because the court has denied defendants' motion in that regard, however, this argument must be disregarded.  Furthermore, defendants will not be

---

Virginia Rule of Civil Procedure 42(c).

prejudiced by the disclosure of insurance to the jury, because the concern surrounding that disclosure "does not exist in a first-party bad faith action," in which the insurer is the named defendant in the underlying claim and the bad faith claim. Light, 506 S.E.2d at 71.

Judge Hallanan's apt reasoning in Light is clearly applicable to the facts presently before the court.  Accordingly, the court denies defendants' motion to bifurcate the extra-contractual claims in this matter.  Having denied the motion to bifurcate, the court likewise denies the motion to stay.

### III.  Conclusion

For the reasons set forth herein, defendants' motion for leave to appear and defend in the name of the underinsured motorists (Doc. No. 6) and motion to bifurcate and stay (Doc. No. 4) are hereby **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 30th day of March, 2007.

                        ENTER:

                        *David A. Faber* (signature)

                        David A. Faber
                        Chief Judge